UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KIMBERLY SPURLING, | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:11 CV 39 |
| | ) | |
| C&M FINE PACK, INC., | ) | |
|       Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kimberly Spurling seeks reconsideration of the Court's Order granting C&M Fine Pack, Inc.'s Motion for Summary Judgment [DE 46]. In that Order, I concluded that there was no evidence that C&M knew that Spurling was disabled when it decided to terminate her for repeatedly falling asleep on the job [DE 42]. It is true that after she was fired Spurling was diagnosed with narcolepsy. But C&M was unaware of this at the time – indeed, even Spurling herself didn't know of her affliction. Spurling now claims that the Court drew inferences in C&M's favor and failed to consider all of the arguments that she raised at the summary judgment stage, and so she wants the judgment amended. Because I remain convinced that an employer cannot discriminate against someone for a disability that both the employer and the employee are unaware of, the motion to amend the judgment is **DENIED**.

First, some background: a motion for reconsideration may be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996); *see also Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (motions for reconsideration cannot be used to introduce evidence that could have been presented at the summary judgment stage). Such motions cannot be used to introduce new evidence or legal

theories that could have been presented earlier or relitigate old theories already presented to the court. *Caisse Nationale*, 90 F.3d at 1269.

Spurling's complaint alleged three claims under the Americans with Disabilities Act Amendment Act[1], 42 U.S.C. § 12111, *et seq.*: disability discrimination, failure of the interactive process and failure to provide reasonable accommodations. She also brings a claim under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, for interference with Spurling's FMLA rights. In the present motion, Spurling does not raise any newly discovered evidence. Rather, she claims that the Court "improperly analyze[d] Spurling's claims under a straight disability theory" and did not properly address her contentions that she met the "regarded as" and "record of" prongs of the ADA. Spurling also argues that the Court ignored evidence that C&M's conduct after Spurling's superior initially recommended termination demonstrated that the initial recommendation was being reconsidered, so that the decision was ultimately made after it knew that she had a disability. Spurling also complains that the Court failed to consider *Bultemeyer v. Fort Wayne Comm. Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996), and her argument that C&M discriminated against her by firing her instead of engaging in an interactive process and working with her on a reasonable accommodation [DE 46 at 2-3]. Finally, Spurling argues that the Court improperly dismissed her FMLA interference claim.

I.   **The Discrimination Claim**

   A.   **C&M had no knowledge of Spurling's disability when it initiated her termination.**

Spurling argues that she pleaded in her complaint that she was not only disabled, but that

---

[1] For ease of reference, even though the Act has been amended, I will continue to use the shorthand "ADA."

she was "regarded as" disabled by C&M and that C&M had a "record of" her disability [DE 46 at 2-3]. 42 U.S.C. § 12102(1)(A)-(C). She argues that the Court's order put in place a diagnosis requirement that essentially dispatches with the "regarded as" and "record of" prongs of the ADA [DE 46 at 3]. The central issue in this case is whether Spurling suffered an adverse employment decision *because of* her disability; this is a question of causation [*see* DE 42 at 8-9, *citing Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002)]. An employer cannot discriminate against an employee "because of" the employee's disability unless the employer has knowledge of the disability. *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931-32 (7th Cir. 1995); *see also, e.g., Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 896-97 (D.C. Cir. 1994) ("courts of appeals have overwhelmingly agreed that for this casual link to be shown the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability") (collecting both Rehabilitation Act and ADA cases); *Morisky v. Broward County*, 80 F.3d 445, 447-49 (11th Cir. 1996) (citing *Hedberg*, rejecting the "contention that a plaintiff can sustain a prima facie case of handicap discrimination without proof that an employer had actual or constructive knowledge of an applicant's disability"); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (finding that where plaintiff failed to inform employer that he had a disability, plaintiff could not satisfy the *prima facie* requirements of ADA claim).

So the Court's analysis focused not on whether Spurling was, in fact, disabled, or if she was qualified to perform the essential functions of her job once her narcolepsy was controlled

with medication [DE 42 at 9].[2]  Rather, it focused on whether C&M fired Spurling "because" she was disabled.

Much of Spurling's motion recites the same arguments that she raised in her motion for summary judgment.  The argument goes that because C&M knew that she was repeatedly falling asleep on the job, that it must have been aware of her disability and fired her because of that disability.  To be sure, Spurling's employment file was replete with documentation regarding incidents where she fell asleep on the job.  But as discussed in the Court's opinion, C&M's knowledge that Spurling was falling asleep on the job does not equate to knowledge that Spurling had a disability [DE 42 at 13].  The Seventh Circuit explained at length in *Hedberg* that firing someone because of the *symptoms* of a disability is not the same as firing someone because of the disability itself.  47 F.3d at 933-34; *see also Crandall*, 146 F.3d at 896-97 (for causation purposes, an employer must have acted with knowledge of the disability itself, not just with knowledge of a problem with the employee's work that could be caused by an potential unknown disability).  In *Hedberg*, the Court held that "[t]he ADA hardly requires that merely because some perceived tardiness and laziness is rooted in disability, an employer who has not been informed of the disability, and who has no reason to know of the disability, is bound to retain all

---

[2] To this point, Spurling attempts to distinguish a number of cases that the Court relied upon because they interpreted the Americans with Disabilities Act, and not the Americans with Disabilities Amendments Act of 2008 (the "ADAAA").  The ADAAA expanded the definition of "major life activities" – which would come into play if there was some question as to whether Spurling was in fact disabled – but did not impact the notice requirement of the ADA. *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 606, n.3 (7th Cir. 2012) ("...the ADAAA broadened the ADA's protection by superseding portions of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manf'g. v. Williams*, 534 U.S. 184 (2002) to, inter alia, include a wider range of impairments that substantially limit a major life activity").  As outlined above, C&M's *knowledge* of her disability is the question at issue in Spurling's case, not whether she was substantially limited in a major life activity.

apparently tardy and lazy employees on the chance that they may have a disability that causes their behavior." 47 F.3d at 934.

This is entirely sensible. To accept Spurling's argument would mean that an employer who has an employee regularly sleeping on the job must take an affirmative step to find out if the sleeping is being caused by a disability, but such a requirement puts the onus on the wrong party. It is the employee's responsibility to notify the employer of the disability; not the other way around. *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) ("An employee has the initial duty to inform the employer of a disability").

Here, while it is true that C&M knew that Spurling was falling asleep on the job, there is no evidence that at the time the initial termination recommendation was made – or even through the many months that Spurling was warned that she could be fired if she continued to fall asleep on the job – that C&M knew that Spurling had a disability. Her sleepiness alone, especially when viewed in conjunction with the fact that Spurling worked the night shift and a second daytime job as well, was not enough to tip off C&M to her disability.

Spurling contends that this somehow places a diagnosis requirement on her, which inappropriately eliminates the "record of" and "regarded as" prongs of the ADA [DE 46 at 2-3, 5-6]. I disagree. Spurling argued in her original briefing that she had a "record of" a physical impairment because of the paperwork that she submitted from her doctor to C&M on April 21, 2010 [DE 22 at 7]. But as noted in the Court's opinion, the doctor's note wasn't received until *after* the wheels had begun turning on Spurling's dismissal – which means that the April 21 "record" of her disability couldn't have been the reason for Spurling's termination [DE 42 at 12].

Spurling also argues that she had a "record of" a disability as early as February 25, 2010,

because she submitted a note from her doctor that said that she "was recently asked to discontinue medicine related to her passing out – please excuse symptoms @ work 2/15/10 & 2/16/10" [DE 26 at 2]. But consider the context. Spurling had been prescribed Paxil for her complaints of anxiety and depression, and her doctor changed her prescription because Spurling experienced dizziness that led to her falling and hitting her head [DE 42 at 3-4]. Bellant even asked Spurling why she was taking the medication, and Spurling told him that it was "for nerves" [DE 42 at 5]. In fact, Spurling was specifically asked if she had a medical condition that could be causing her to fall asleep, and she responded that she did not [DE 42 at 4-5]. The February 2010 incident was for a medical condition completely different than Spurling's narcolepsy, so the attendant documentation can't establish that C&M had a record of Spurling having narcolepsy and can't establish that Spurling was fired because she had a disability.

Finally, Spurling argues that the notations in her personnel file about her falling asleep on the job, and in particular the summary of the April 15, 2010 incident where she fell asleep for the last time, suffice to serve as a "record of" her disability [DE 46 at 4]. Again, Spurling is correct that her file was replete with documentation regarding incidents where she fell asleep on the job, which were discussed at length in the Court's opinion [DE 42 at 2-4]. But again, the Court has already considered and rejected the argument that C&M's knowledge that Spurling was falling asleep on the job equates to knowledge that Spurling had a disability [DE 42 at 13]. *Hedberg*, 47 F.3d at 933-34.

As to the "regarded as" prong, Spurling argued in her summary judgment papers that the documented safety warnings she received after falling asleep on the job indicate that C&M

"regarded" her as having an impairment [DE 22 at 8-9]. Spurling also argued that C&M regarded her as having a disability because she told C&M, after they suspended her pending termination, that she "might" have a medical condition, and that Swoyer acknowledged this when he wrote in an email that "I find it interesting that after all of the discussion sessions and conversations along the way that she waited until the point of termination to try to establish her eligibility for protection under either FMLA or ADA" [DE 22 at 9]. Finally, she argued that the April 21, 2010 doctor's note established that she was "regarded as" having a disability [DE 22 at 9].

Once again, these arguments have already been raised and rejected. As discussed above, the notations in Spurling's personnel file don't indicate that C&M regarded Spurling as having a disability. Rather, they indicate that Spurling had a long and well-documented history of snoozing on the job. This was despite several warnings and despite C&M's offer to allow her to change shifts to fix the problem. To repeat: firing an employee because of the *effects* of the disability, without an obvious link to a debilitating condition, does not subject an employer to liability under the ADA. *Hedberg*, 47 F.3d at 934 [DE 42 at 12-13]. Moreover, the information that Spurling provided about a potential disability *after* the April 15 disciplinary meeting, where Spurling was placed on suspension pending termination, and *after* Bellant's April 15 email recommending that Spurling be terminated for repeatedly sleeping on the job is not evidence that C&M fired Spurling *because of* her disability; Bellant recommended that Spurling be terminated prior to receipt of the information.

      **B.**      **C&M's actions after Spurling informed it that she "might" have a disability**

Spurling also argues that the Court has misconstrued the evidence of the parties' behavior

following Spurling's notification to C&M that her sleeping might be caused by a medical condition. In particular, Spurling takes issue with the Court's analysis of the termination process, and claims that the events that transpired following Spurling's placement on suspension pending termination and Bellant's recommendation that she be terminated, starting with Spurling's revelation to C&M that she might, after all, have a medical condition that was causing her to fall asleep at work, are evidence that C&M did in fact fire her "because of" her disability. Spurling essentially makes the same argument that I rejected at the summary judgment stage: that despite months of warnings that falling asleep on the job could subject her to termination, and finding herself in that precise situation, once she indicated to C&M that she might have a medical condition, the termination proceedings were required to come to a halt [DE 42 at 11-12].

Spurling now argues that the Court neglected to consider evidence that C&M had information during the time it was mulling over the process of terminating Spurling that indicated that Spurling had a disability [DE 46 at 4-8]. Spurling presents no new evidence in support of this argument. Rather, she argues that the Court improperly weighed the evidence regarding C&M's actions after Spurling gave them notice that she might have a disability [DE 46 at 6-7]. She claims that if the facts are construed in the light most favorable to her, Bellant and Swoyer's subsequent communications indicate that Bellant somehow withdrew his initial termination recommendation, and that C&M knew that Spurling was disabled for seven days while it "toyed with . . . the decision to terminate" [DE 46 at 7].

But the evidence that C&M had internal discussions about whether to follow through on Bellant's initial recommendation that Spurling be fired, after it received Spurling's ADA paperwork, does not change the fact that "Bellant's recommendation to Swoyer that Spurling

should be terminated was made *without* knowledge of any potential medical condition, and thus he could not have recommended that she be terminated 'because of' her disability" [DE 42 at 10]. Spurling argues that the cases cited and relied upon by the Court – *Hedberg*, *Adkins v. Briggs & Stratton*, 159 F.3d 306 (7th Cir. 1998), and *Kolivas v. Credit Agricole*, 1996 WL 684167(S.D.N.Y. 1996) – can be distinguished from her case because Bellant extended Spurling a "life-line . . . by offering the employee extra time to confer with her physician" [DE 46 at 12].[3]

But Spurling never explains how C&M's actions after Spurling informed C&M that she had a medical condition somehow set her case apart from the cases that the Court relied upon. And Spurling doesn't cite a single case in support of her argument that C&M's actions in giving her paperwork to take to her doctor somehow had to bring the termination process to a grinding halt. Although she disputes that the termination process was "in the works for a long period of time" [DE 46 at 6], the evidence is clear that she was warned multiple times over a period of months that continuing to fall asleep on the job could result in termination, that she was told that she was being suspended pending termination, that Bellant recommended to his superiors that she be terminated, and that ultimately, C&M approved the recommendation and terminated Spurling. Contrary to Spurling's contention, there is simply no evidence that Bellant ever "abrogated" his initial recommendation to terminate Spurling. Rather, the evidence is that C&M did, in fact, follow through on that recommendation, which was lodged when the company had

---

[3]As noted by C&M, each of these cases was cited in its summary judgment briefing and Spurling failed to address them at the time, despite having the opportunity to do so [DE 50 at 5]. Spurling now attempts, for the first time, to argue that these cases are not applicable to her. Spurling should have raised these arguments at the summary judgment stage, which "is not a dress rehearsal or practice run; it 'is the put up or shut up moment in a lawsuit.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (*quoting Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

no knowledge that Spurling was suffering from a disability.

The bottom line is that Spurling was warned for months that if she continued to fall asleep on the job, she would be terminated. During that time, Spurling denied that she had a medical condition that could be causing her sleepiness. Only after she fell asleep on the job again and was told that she was being suspended pending termination, and Bellant did, in fact, recommend that she be terminated, did Spurling indicate for the first time that she might have a disability. Because Spurling's termination was in the works before C&M learned that she had a disability, it cannot be said that C&M fired her *because of* her disability. *Kolivas*, 1996 WL 684167, at *3-5 (irrelevant that final decisionmaker did not officially approve supervisor's initial termination decision until after plaintiff provided information about medical condition), *aff'd*, 125 F.3d 844 (2d Cir. 1997); *Canales-Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 499-500 (S.D.N.Y. 2009) (no causal connection between plaintiff's disability and termination when first notice of disability was on eve of termination hearing and after plaintiff was warned and progressively disciplined).

But let's assume for the moment that the doctor's note somehow required C&M to stop the presses, brought the termination proceedings to a halt for re-evaluation in light of the doctor's claims, and somehow abrogated Bellant's recommendation. Spurling's claim would still fail because it hinges upon a note from her doctor that is altogether uninformative. It is true that Dr. Beitzel checked a box that said that she had a mental or physical disability covered under the ADA. But in describing Spurling's condition, Dr. Beitzel merely wrote that "pt has excessive drowsiness that affects her job" [DE 22-3]. This was not exactly a news flash to C&M. This note merely told C&M what it already well knew. A rote conclusion in a doctor's

note that an employee is "disabled" is not enough, especially when it comes in the 11th hour. As one court put it: "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996). Dr. Beitzel's cursory note was simply not enough, in light of Spurling's long history of sleeping at work and her previous denial that she had a medical problem, to provide notice to C&M that Spurling was disabled at the time that it terminated her.

## II. The Reasonable Accommodation and Interactive Process Claims

Spurling argues in her motion, as she did in her summary judgment briefing, that the case most closely analogous to hers is *Bultemeyer v. Fort Wayne Comm. Schools*, 100 F.3d 1281 (7th Cir. 1996). But *Bultemeyer* is a far cry from this case. In *Bultemeyer*, the plaintiff had a long and documented history of bipolar disorder and paranoid schizophrenia, which his employer was fully aware of and for which the employer had offered him accommodations in the past. *Id.* at 1284. Indeed, *Bultemeyer* makes clear that the threshold inquiry in a reasonable accommodation case is whether the employer was *aware of the disability*. 100 F.3d at 1284. The question of whether the employer in *Bultemeyer* knew about the plaintiff's disability was undisputed: it did. *Id.* In other words, *Bultemeyer* is inapplicable to Spurling's case unless C&M knew that she was disabled. This Court has determined that when C&M started the termination process, it did not know that Spurling was disabled, and even when Spurling returned the paperwork from her doctor indicating that she was having "excessive drowsiness," the information was so vague that C&M wasn't on notice that Spurling was disabled. Accordingly, *Bultemeyer* is inapplicable here, and Spurling's singular reliance on it is misplaced.

**III.     The FMLA Claim**

Spurling also argues that *Byrne v. Avon Prods., Inc.*, 328 F.3d 379 (7th Cir. 2003), governs the FMLA issues in this case. But again, the Court's finding that Spurling has not presented evidence that C&M fired her because of her disability means that summary judgment in C&M's favor is appropriate on this claim, as "FMLA leave depends on the employer's knowledge of a qualifying condition." *Byrne*, 328 F.3d at 381. And as thoroughly explained in the Court's opinion, the facts of *Byrne* stand in sharp contrast to Spurling's case [DE 42 at 16-17 ("Spurling argues . . . that under *Byrne,* 328 F.3d at 381, an employee's 'unusual behavior' is all that is required to put the employer on notice that FMLA leave is needed . . . [b]ut Spurling's behavior on April 12 was far from unusual; it was a continuing course of conduct that had been going on for over a year")].

As noted in the Court's previous opinion [DE 42 at 16], "[n]o FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave." *Gorski v. Med. Protective Co.*, 2010 WL 4684023, at *13 (N.D. Ind. Nov. 10, 2010) (no FMLA violation where employer had begun preparing to terminate employee before employee requested FMLA leave). Spurling presents no new arguments in her motion to amend the judgment that were not raised in her briefing on the summary judgment motions. Because C&M did not know that Spurling was disabled at the time it began the termination process, there was no violation of the FMLA.

## CONCLUSION

For the foregoing reasons, Spurling's Motion to Alter/Amend Judgment [DE 46] is **DENIED.**

**SO ORDERED.**

ENTERED: February 21, 2013

s/ Philip P. Simon
Philip P. Simon, Chief Judge
United States District Court
